NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                            :
RALPH J. CIROTTI,                           :
                                            :
         Plaintiff,                         :
                                            :         Civil Action No. 10-05468 (JAP)
         v.                                 :
                                            :
MICHAEL J. ASTRUE,                          :              **OPINION**
COMMISSIONER OF SOCIAL SECURITY.            :
                                            :
         Defendant.                         :
                                            :
_____

PISANO, District Judge.

      Before the court is an appeal by Ralph J. Cirotti ("Plaintiff") from the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his request for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. The Court has jurisdiction to review this matter under 42 U.S.C. § 405(g) and 1383(c)(3) and decides this matter without oral argument. *See* Fed. R. Civ. P. 78. The issue presented is whether the Commissioner's decision to deny Plaintiff's application for DIB and SSI is supported by substantial evidence. The Court finds that the record provides substantial support for the Commissioner's denial and affirms his decision.

## I.    PROCEDURAL HISTORY

      On August 27, 2007, Plaintiff filed an application for DIB benefits under Title II and Part A of Title XVIII of the Social Security Act (the "Act"), and on September 14, 2007, he requested SSI under Title XVI of the Act claiming various affective mood disorders including depression, high anxiety, bipolar disorder, obsessive compulsive disorder and panic attacks. (R. 125-133).

These claims were initially denied on April 16, 2008, and upon reconsideration.  (R. 77-86, 88-93).  On May 14, 2008, Plaintiff requested a hearing, which was held on October 1, 2009, before Administrative Law Judge Paula Garrety (the "ALJ").  (R. 94).  Plaintiff appeared and testified at the hearing.  (R. 42-69).  The ALJ issued her decision on October 21, 2009, finding that Plaintiff was not disabled under the Act.  (R. 8-18).  On October 23, 2009, Plaintiff requested review of the ALJ's decision by the Appeals Council.  (R. 7).  His request was denied on August 25, 2010.  (R. 1-6).

## II.    BACKGROUND

A.    *Plaintiff's Personal Background and Work History*

Plaintiff was born on June 3, 1953, and at the time of his hearing before the ALJ he was 56 years old.  (R. 125).  He is divorced and has shared custody of his two children who live with him on a part time basis.  (R. 47).  Plaintiff completed a high school education. (R. 148).  He worked primarily as a service technician and traveled around the country to repair equipment that made semiconductors.  (R. 65).  He also worked as a machine operator/tender making boxes and as a packer/capper.  (R. 66).

B.    *Plaintiff's Medical History*

1.    *Dr. Sanjeevani Jain, Treating Psychiatrist*

Dr. Jain began to treat Plaintiff in November 2001 and was his main treating psychiatrist. Plaintiff submitted his treatment records with Dr. Jain from April 2007 until February 2010.  (R. 214-246, 266-293, 298, 299-306).  She diagnosed Plaintiff with mixed type bipolar disorder based on her positive clinical findings that Plaintiff experienced mood swings, anxiety, severe depression, sleep problems and suicidal ideation.  She found these symptoms prevented Plaintiff from working.  (R. 226, 239, 244).  She also determined that Plaintiff's Global Assessment of

Functioning ("GAF") score was 60-65, which is indicative of mild difficulty in social and occupational functioning.

Dr. Jain noted that Plaintiff lacked motivation, was in social withdrawal, felt hopeless, and worthless, had tremendous low self-esteem and had repeated episodes of decompensation on and off throughout treatment. (R. 298 and 243). She prescribed Pristiq, Ambien, Xanax, Abilify and Eskalith to calm Plaintiff down and to prevent him from having suicidal thoughts. *(R. 51).* Dr. Jain concluded from her mental residual functional capacity ("RFC") assessment of Plaintiff that he was markedly limited[1] with regard to the category of understanding and memory.[2] Within this category, she found that Plaintiff was markedly limited in his ability to understand and remember detailed instructions. However, she found that Plaintiff was mildly limited in his ability to remember locations and work-like procedures, and he was moderately limited in his ability to understand and remember very short and simple instructions. (R. 218).

Dr. Jain also found that Plaintiff was markedly limited in his ability to maintain sustained concentration and persistence in the following areas: 1) his ability to carry out detailed instructions; 2) his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; 3) his ability to sustain an ordinary routine without supervision; 4) his ability to work in coordination with or proximity to others without being distracted by them; and 5) his ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without

---

[1]        According to the regulations, a "marked" limitation means: "more than moderate, but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." Listing § 12.00C. "In addition, 'marked' is not defined by a specific number of different behaviors or activities in which social functioning is impaired, but by the nature and overall degree of interference." 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listing of Impairments" or "the Listing").

[2]        An RFC assessment analyzes twenty mental function items which are grouped under four main categories: understanding and memory, sustained concentration and persistence, social interaction and adaptation. POMS DI 24510.060(B)(2)(b).

an unreasonable number and length of rest periods. (R. 218-219). She found that Plaintiff was mildly limited only in his ability to carry out very simple one or two-step instructions and moderately limited in his ability to maintain attention and concentration for extended periods and to make simple work related decisions. (Id.)

Dr. Jain further determined that, in the category of social interactions, Plaintiff was markedly limited in his ability to interact appropriately with the public, and in his ability to accept instructions and respond appropriately to criticism from supervisors. (R. 218). He was also markedly limited in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes and in his ability to maintain socially appropriate behavior or to adhere to basic standards of neatness and cleanliness. However, she found that he was only moderately limited in his ability to ask simple questions or request assistance. (R. 219).

Finally, Dr. Jain found that Plaintiff was also markedly limited in his ability to respond appropriately to changes in the work setting, to set realistic goals or make independent plans, to be aware of normal hazards and to take appropriate precautions and in his ability to travel to unfamiliar places or use public transportation. (R. 219-220).

2.    *Dr. Marc Friedman, Psychologist*

Dr. Friedman examined Plaintiff on April 15, 2008. (R. 193-195). Plaintiff was alert and able to provide a coherent history. He told Dr. Friedman about his diagnosis of anxiety and bipolar disorder. (Id.) Plaintiff recalled that his depression began around the time his wife suddenly left him. During that period, his father passed away and he found his brother dead in his apartment. (R. 194). Plaintiff made self disparaging comments and remarked that he lost confidence in himself. (R. 193-194). He also reported panic attacks which occurred about once a week. During those episodes he felt that "people are watching him, he perspires a lot, has rapid

4

heartbeat and needs to escape." (R.193). In addition, Plaintiff expressed a lack of joy and motivation when performing routine chores, such as washing the dishes or doing the laundry. (R. 195). He stated he lost interest in taking care of his yard and garden, activities he used to enjoy. Instead, he spends considerable time watching TV. (Id.)

With regard to Plaintiff's cognitive abilities, Dr. Friedman determined that his long-term memory was slightly impaired, and his short-term memory and concentration were mildly impaired. (R. 194). Plaintiff was able to compute serial sevens until seventy-two and was able to repeat five digits forward, but could only compute four digits backward. (Id.) Dr. Friedman diagnosed Plaintiff with bipolar disorder, current episode depressed panic disorder and assigned him a GAF score of 45. (R. 195). He found his intelligence to be average. (R. 194).

### 3.     Dr. Clara Castillo-Velez, State Agency Psychological Consultant

On April 16, 2008, Dr. Castillo-Velez administered a psychiatric review and an RFC assessment of Plaintiff. (R. 196-213). In her psychiatric review, she determined that Plaintiff suffered from a mood disturbance, accompanied by bipolar disorder and symptoms of depressive syndrome, under the "A" criteria of the Listing § 12.04-affective disorders.[3] (R. 199). She

---

[3]     Satisfaction of the "A" criteria of Listing § 12.04 requires "[m]edically documented persistence, either continuous or intermittent, of one of the following:

> (1) Depressive syndrome characterized by at least four of the following: (a) Anhedonia or pervasive loss of interest in almost all activities; or (b) Appetite disturbance with change in weight; or (c) Sleep disturbance; or (d) Psychomotor agitation or retardation; or (e) Decreased energy; or (f) Feelings of guilt or worthlessness; or (g) Difficulty concentrating or thinking; or (h) Thoughts of suicide; or (i) Hallucinations, delusions, or paranoid thinking; or

> (2) Manic syndrome characterized by at least three of the following: (a) Hyperactivity; or (b) Pressure of speech; or (c) Flight of ideas; or (d) Inflated self-esteem; or (e) Decreased need for sleep; or (f) Easy distractibility; or (g) Involvement in activities that have a high probability of painful consequences which are not recognized; or (h) Hallucinations, delusions or paranoid thinking; or

> (3) Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)."

found that Plaintiff suffered from decreased energy and feelings of guilt or worthlessness, two of the four symptoms necessary to definitively diagnose a patient with depressive syndrome.

Dr. Castillo-Velez concluded that under the "B" criteria of Listing § 12.04, Plaintiff was moderately limited in his functional capacities, such as in his ability to perform activities of daily living and in his ability to maintain concentration, persistence or pace.[4] (R. 206). She also found that Plaintiff did not suffer any extended episodes of decompensation. (Id.)

Dr. Castillo-Velez also performed a mental RFC assessment. In Section I of the RFC assessment, she determined that Plaintiff was moderately limited in his understanding and memory. (R. 210). Within this category, she found that although Plaintiff was moderately limited in his ability to understand and remember detailed instructions, he was not significantly limited in his ability to remember locations and work-like procedures, or in his ability to understand and remember very short and simple instructions. (Id.)

Dr. Castillo-Velez further found that Plaintiff was moderately limited in his ability to maintain sustained concentration and persistence. (Id.) Within the category of concentration and persistence, she found that Plaintiff was moderately limited in the following: 1) his ability to carry out detailed instructions; 2) his ability to maintain attention and concentration for extended periods; 3) his ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; 4) his ability to sustain an ordinary routine without special supervision; 5) his ability to work in coordination with or proximity to others without being distracted by them; 6) his ability to make simple work-related decisions; and 7) his ability to complete a normal workday and workweek without interruptions from psychologically based

---

[4]       Satisfaction of the "B" criteria of Listing § 12.04 requires at least two of the following: "(1) Marked restriction of activities of daily living; or (2) Marked difficulties in maintaining social functioning; or (3) Marked difficulties in maintaining concentration, persistence, or pace; or (4) Repeated episodes of decompensation, each of extended duration."

symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (R. 210-211).  However, Dr. Castillo-Velez found that Plaintiff was not significantly limited in his ability to carry out very short and simple instructions.  (R. 210).

In addition, Dr. Castillo-Velez determined that Plaintiff was moderately limited in his social interactions.  (R. 211).  Specifically, she found that Plaintiff was moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors and in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  However, she found Plaintiff was not significantly limited in his ability to interact appropriately with the general public, in his ability to ask simple questions or request assistance, or in his ability to maintain socially appropriate behavior or to adhere to basic standards of neatness and cleanliness.  (Id.)

Finally, Dr. Castillo-Velez found that, within the adaptation category, Plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting and in his ability to set realistic goals or make independent plans, but was not significantly limited in his ability to be aware of normal hazards and to take appropriate precautions or in his ability to travel in unfamiliar places or use public transportation.  (Id.)

Based on the above conclusions, Dr. Castillo-Velez found that Plaintiff's long-term memory was slightly impaired, his concentration was mildly impaired and his short-term memory was fair.  (R. 212).  The doctor subsequently concluded that Plaintiff maintains the requisite concentration, persistence and pace necessary to complete simple job tasks.  (Id.)

    *4.*    *Dr. Sandy V. Segaram, Primary Care Physician*

On April 30, 2009, Dr. Segaram completed a multiple impairment questionnaire.  (R. 247-254).  She was Plaintiff's primary care physician since 1996, and diagnosed Plaintiff with

"bipolar depression" with a poor prognosis, based on her clinical findings of his anxiety, lack of interest, short-term memory loss and his feelings of uselessness and worthlessness.  (R. 247, 252).  In addition, Dr. Segaram observed that Plaintiff was precluded from using his hands and fingers for fine manipulations and from using his arms for reaching.  (R. 251).  She also found that Plaintiff's symptoms were severe enough to interfere with his attention and concentration.  (R. 252).   She therefore concluded that Plaintiff's physical and psychological limitations prevented him from performing either a full time competitive job that requires activity on a sustained basis or even to tolerate a low stress work environment.  (R. 252-253).

     *5.*     *Dr. Eric S. Englestein, Neurologist*

     After referral from Dr. Segaram, Dr. Englestein examined Plaintiff on three occasions between May and August of 2009.  (R. 255-259).  On May 8, 2009, Plaintiff complained of some short-term memory difficulty that he had been experiencing.   Dr. Englestein observed that Plaintiff was alert, fully oriented, and able to follow a three-step command.  He was also able to remember three out of three objects within a few minutes of testing.  (R. 258).  Dr. Englestein, found that Plaintiff's neurological exam did not show any major abnormality.

     On June 19, 2009, Dr. Englestein performed a series of tests on Plaintiff and ordered him to undergo formal neurocognitive testing to definitively assess his problems.  (R. 256).  After reviewing the tests results, Dr. Englestein concluded on August 14, 2009 that Plaintiff's brain was working normally, but that his emotional disorder was interfering with his memory.  (R. 255).  Dr. Englestein suggested that Plaintiff was suffering from pseudodementia, rather than an organic brain syndrome.

6.      *Dr. Kenneth Freundlich, Psychologist*

At the request of Dr. Englestein, Dr. Freundlich evaluated Plaintiff's cognitive functioning on July 6, 2009.  (R. 261-265).  He determined that Plaintiff's results on tests designed to measure his attention, concentration, learning, memory and general intelligence were within normal ranges.  (R. 262-264).

Plaintiff's attention and concentration score was well within the normal range on the Wechsler Memory Scale-III, a working memory index.  Plaintiff also performed well on other tests of concentration span and vigilance, as both his auditory digit span and his nonverbal spatial span were at the fiftieth percentile.  However, on the Conners' Continuous Performance Test-II, a computerized measure of attention and concentration, Plaintiff made numerous omission and commission errors, and his reaction time was uneven which is consistent with fluctuating attention.  Plaintiff was able to complete tests of perseverance without difficulty, as supported by his ability to complete serial recitation tasks well within the average range.  Dr. Freundlich found that despite some evidence of fluctuating attention and concentration, Plaintiff did not exhibit blatant lapses of attention.  (R. 262).

On the learning and memory section of the Wechsler Memory Scale III test, Plaintiff's overall performance was within the average range, but his scores were uneven.  Dr. Freundlich observed that other measures of learning and memory demonstrated that Plaintiff's overall knowledge base is adequate, and he can tap into and retrieve information from that base.  (R. 262-263).  In addition, Plaintiff's overall intellectual abilities were shown to be well within the average range on the Wechsler Abbreviated Scale of Intelligence.  (R. 263).

Based upon the clinical scales, Dr. Freundlich found Plaintiff to suffer from high levels of anxiety and depression, coupled with multiple cognitive and somatic complaints.  The overall

results from the evaluation indicated that Plaintiff's cognitive functioning was somewhat uneven, but the majority of his scores were within normal range.  His overall intelligence and memory were average and there was no evidence of pervasive cognitive impairment.  Dr. Freundlich suggested that psychological interference is causing a compromise in Plaintiff's functional ability.  He concluded that Plaintiff should be sent back to a psychiatrist for ongoing treatment, based on his finding that emotional factors were most likely the cause of his perceived cognitive difficulties.  (R. 265).

C.      *Plaintiff's Testimony*

According to Plaintiff's testimony at the hearing, he does not do much during the day except to walk across the street to the local convenience store.  He watches TV and takes daily naps that last about two hours.  (R. 51).  It is difficult for him to do basic household chores, except that he is obsessive about cleaning the kitchen floor which occupies him for about two hours a day. He takes showers a few times a week.  Plaintiff experiences daily episodes of anxiety.  He is afraid to talk with or to be around people.  He claims he is forgetful, does not know where he places things and makes a lot of mistakes.  Plaintiff believes he was fired from his last job in March 2009 because he was late to work, had many absences and fell asleep at the job.  (R. 48-49).

## III.  <u>LEGAL STANDARD FOR DISABILITY BENEFITS</u>

A.      *Disability Defined*

To be eligible for SSI and DIB benefits,[5] a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

---

[5]      The standards for obtaining DIB, 42 U.S.C. § 401 *et. seq*., and SSI, 42 U.S.C. § 1381 *et. seq*., are the same in all relevant aspects. *See Sullivan v. Zebley*, 493 U.S. 521, 526 n.3 (1990).

expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

A person is disabled for these purposes only if his physical and medical impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.*

B.      *The Five-Step Analysis for Determining Disability.*

Social Security regulations set forth a five-step, sequential evaluation procedure to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  For the first two steps, the claimant must establish 1) that he has not engaged in substantial gainful activity since the onset of his alleged disability, and 2) that he suffers from a "severe impairment" or "combination of impairments."  20 C.F.R. § 416.920 (b)-(c).  Given that the claimant bears the burden of establishing these first two requirements, his failure to meet this burden automatically results in a denial of benefits, and the court's inquiry necessarily ends there.  *Bowen v. Yuckert*, 482 U.S. 137, 146-147 n. 5. (1987) (delineating the burdens of proof at each step of the disability determination).

If the claimant satisfies his initial burden, he must provide evidence that his impairment is equal to or exceeds one of the impairments listed in Appendix 1 of the regulations.  20 C.F.R. § 416.920(d).  Upon such a showing, he is presumed to be disabled and is automatically entitled to disability benefits.  *Id.*  If he cannot so demonstrate, the benefit eligibility analysis requires further scrutiny.

The fourth step of the analysis focuses on whether the claimant's RFC sufficiently permits him to resume his past relevant work.  20 C.F.R. § 416.920 (e)-(f).  A claimant's RFC is defined as "that which an individual is still able to do despite limitations caused by his or her

impairments."  20 C.F.R. § 404.1520(e).  Again, the burden lies with the claimant to show that he is unable to perform his past work.  *Fargnoli v. Massanari,* 247 F.3d 34, 39 (3d Cir. 2001).  If the claimant is found to be capable to return to his previous line of work, then he is not "disabled" and is not entitled to disability benefits.  *Id.*  Should the claimant be unable to return to his previous work, the analysis proceeds to step five.

At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial, gainful work.  20 C.F.R. § 416.920(g); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987).  If the Commissioner cannot satisfy this burden, the claimant is "disabled" and will receive social security benefits.  *Yuckert,* 482 U.S. at 146-147 n 5.

C.    *The Record Must Provide Objective Medical Evidence.*

Under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* and 42 U.S.C. § 1381 *et seq.*, a claimant is required to provide objective medical evidence in order to prove his disability. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 42 U.S.C. § 1382c(H)(I) ("In making determinations with respect to disability under this subchapter, the provisions of the section … 423(d)(5) of this title shall apply in the same manner as they apply to determinations of disability under subchapter II of this chapter.")  Accordingly, a claimant cannot prove that he is disabled solely on his subjective complaints of pain and other symptoms.  *See Green v. Schweiker,* 749 F.2d 1066, 1069-70 (3d Cir. 1984) ("[S]ubjective complaints of pain, without more, do not in themselves *constitute* disability.")  The claimant must provide medical findings that show that he has a medically determinable impairment.  *See id., see also* 42 U.S.C. § 423(d)(1)(A) (defining "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment;"  42 U.S.C. § 1382c(a)(3)(A) (defining a disabled person as one who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment").

Furthermore, a claimant's symptoms "such as pain, fatigue, shortness of breath, weakness or nervousness, will not be found to affect [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."  20 C.F.R. § 416.929(b); *see Hartranft v Apfel*, 181 F.3d 358, 362  (3d Cir. 1999) (rejecting claimant's argument that the ALJ failed to consider his subjective symptoms when the ALJ had made findings that his subjective symptoms were inconsistent with objective medical evidence and the claimant's hearing testimony); *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (denying claimant benefits where claimant failed to proffer medical findings or signs that he was unable to work).

## IV.   STANDARD OF REVIEW

The standard under which the District Court reviews an ALJ decision is whether there is substantial evidence in the record to support the ALJ's decision.  42 U.S.C. § 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).  "[M]ore than a mere scintilla," substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)).  The inquiry is not whether the reviewing court would have made the same determination, but, rather, whether the Commissioner's conclusion was reasonable.  *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Substantial evidence, therefore may be slightly less than a preponderance.  *Hanusiewicz v. Bowen*, 678 F. Supp. 474, 476 (D.N.J. 1988).

The reviewing court, however, does have a duty to review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). As such, "a court must take into account whatever in the record fairly detracts from its weight." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (internal quotations omitted). The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D.Pa. 1987). As the Third Circuit has instructed, a full explanation of the Commissioner's reasoning is essential to meaningful court review: "Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (internal quotations omitted). Nonetheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182.

## V.   <u>THE ALJ'S DECISION</u>

In her decision, the ALJ applied the requisite sequential evaluation and considered all relevant evidence before her, including Plaintiff's testimony. (R. 8-18). She concluded that Plaintiff was not disabled. At step one of the sequential evaluation, the ALJ determined that Plaintiff did not engage in any substantial gainful activity after May 22, 2007, the alleged onset date of disability. (R. 13). The ALJ noted that although Plaintiff continued to work after the onset date of disability through March 2009, he was unable to maintain any sustained period of employment because of his condition. She determined that such work did not constitute

substantial gainful activity and found in Plaintiff's favor at step one.  (R. 14).  At step two, the ALJ concluded that the evidence established the existence of a severe impairment, specifically, bipolar disorder.  Accordingly, she continued her analysis of Plaintiff's claims.

Although the ALJ found Plaintiff's impairment to be severe, the ALJ determined at step three that Plaintiff did not have an "impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1, Regulations No. 4."  (R. 14).  The ALJ relied upon the opinion of Dr. Castillo-Velez, the state agency psychological consultant, who found that Plaintiff's mood disorder did not meet either the "B" or "C" medical criteria of the impairments listed in the Regulations.  Specifically, the ALJ determined that, with regard to the applicable paragraph B criteria of such listings, Plaintiff's functional limitations at most moderately interfered with his activities of daily living, his ability to maintain concentration, persistence or pace and did not produce extended episodes of decompensation.

Based upon Plaintiff's mental RFC assessment, the ALJ determined at step four that Plaintiff is able to perform self-paced work not involving detailed instructions, with one to two step job tasks in occupations involving relatively few changes in the work routine and no more than limited interaction with coworkers and the general public.  (Id.)  To reach this conclusion, the ALJ relied upon Dr. Friedman's medical reports, which found Plaintiff's long-term memory, short-term memory and concentration to be only mildly impaired.  Dr. Friedman also noted that Plaintiff spends a lot of time watching TV and "in fact looks forward to it," which does not suggest significant deficits in attention and concentration.  (R.16, *see* 195).  In addition, results from neurocognitive tests administered by Dr. Freundlich show that Plaintiff's memory, attention and concentration were mostly within normal limits.  (R. 15).  Dr. Englestein similarly

determined that Plaintiff was oriented to person, place and time and was able to follow three-step commands.  Based on her mental RFC assessment, Dr. Castillo-Velez also concluded that Plaintiff was not precluded from performing simple job tasks on a sustained and competitive basis.  The ALJ further found that although Plaintiff tends to isolate, he is able to use public transportation, shop for household groceries and shop for other household needs on a regular basis.  The ALJ noted that Plaintiff testified that a court awarded him shared custody of his children and that the children stay with him more than fifty percent of the time.  (R. 16).  The ALJ disregarded the assessment of Plaintiff's marked limitations of functional capacity provided by Dr. Jain and Dr. Segaram because she found that their findings "were not supported by Plaintiff's treatment records, and are also inconsistent with Plaintiff's activities of daily living, which he found were not suggestive of wholly disabling functional limitations." (R. 160.)  Based upon the ALJ's RFC assessment at step four, she determined that Plaintiff is precluded from returning to any work performed over the previous fifteen years.

At step five, the ALJ found that, considering Plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  In making this determination, the ALJ relied upon the testimony of the vocational expert ("VE") who found that given all of these factors the individual would be able to work at jobs in the following occupations: cleaning, security guard, and stock worker.  Based on the VE's testimony, the ALJ concluded that Plaintiff was capable of performing such work and therefore was not disabled under the Act.

Plaintiff now challenges the ALJ's decision primarily on four grounds:

1.  The ALJ failed to properly analyze Plaintiff's impairment under the third step of the evaluation.
2. The ALJ failed to follow the treating physician rule.
3. The ALJ failed to properly evaluate Plaintiff's testimony.

16

4. The ALJ relied upon flawed vocational expert testimony.

The Commissioner contends that the ALJ's decision is supported by substantial evidence and should therefore be affirmed.

## VI.   LEGAL DISCUSSION

A.   *The ALJ's Finding that Plaintiff was not Disabled is Supported by the Record.*

Plaintiff argues that the ALJ erred in failing to find that he was *per se* disabled under Listing § 12.04.  First, Plaintiff contends that the ALJ incorrectly rejected Dr. Jain's opinion.  He alleges that the ALJ ignored Dr. Jain's clinical findings and her December 2008 assessment that he had the requisite symptoms to support a depressive syndrome.  Plaintiff maintains that Dr. Jain's December 2008 clinical findings indicated that he suffered from all the characterizations of a depressive syndrome except for hallucinations, delusions or paranoid thinking, and that he was markedly limited in his ability to maintain sustained concentration and persistence, and in his social interactions, and that he experienced episodes of decompensation in work or work-like settings.  (R. 216 and 218- 220).

The Court finds that the ALJ's conclusion that Dr. Jain's opinion was inconsistent with Plaintiff's treatment record is supported by substantial evidence.  A medical report is acceptable evidence to establish an impairment if it contains medical history and clinical findings, such as the results of a mental status exam, laboratory findings and a diagnosis.   20 C.F.R. § 404.1513(b).  The impairment must also be proven by symptoms and signs, which consist of anatomical, physiological or psychological abnormalities which must be shown by medically acceptable clinical diagnostic techniques.  20 C.F.R. 404.1528(a)-(b).  Dr. Jain's opinion consists only of conclusory statements that lack support from any cognitive evaluation or any other medical finding.   For example, Dr. Jain's April 2007 medical report and her July 2007

certification concluded that Plaintiff was unable to perform any work, but did not rely on any evidence from Plaintiff's treatment records.  (R. 244).  Similarly, Dr. Jain's January 2008 medical report concluded that Plaintiff was prevented from working at that time.  She determined that Plaintiff's bipolar disorder, mood swings, severe depression and suicidal thoughts limit his ability to do work related activities, but failed to cite any findings from Plaintiff's medical records that would support her conclusions.  (R. 239).  Furthermore, in Dr. Jain's responses to an April 2008 multiple impairment questionnaire, she indicated that Plaintiff is totally disabled (R. 231), a conclusion that goes beyond the scope of a medical opinion.  *See* 20 C.F.R. § 404.1527(e) (determinations of disability are considered "administrative findings that are dispositive of the case" and reserved exclusively for the ALJ).

The ALJ's assessment that Dr. Jain's opinion was inconsistent with Plaintiff's daily activities is also supported by the record.  Plaintiff stated he is able to perform routine daily activities, which include his ability to use public transportation, to shop in the convenience store daily, to drive, to clean the kitchen floor, to prepare his own meals and to take care of his personal needs. (R. 48, 55, 57, 160, 164-166).   Although Plaintiff maintains the ALJ mischaracterized Plaintiff's daily activities by stating that he would only "occasionally go to the convenience store" and his children did his grocery shopping for him, (Pl's Br. 16), this argument is contradicted by his own testimony.  Plaintiff admits he goes daily to the convenience store and shops for food and household items one or two times a month. (R. 57, 166).  These daily activities contradict a finding of "wholly disabling functional limitations." (R. 16).

Plaintiff also argues that the ALJ erred in accepting the opinion of the state agency psychological consultant, Dr. Castillo-Velez, who found that he did not meet the criteria of Listing § 12.04.  State agency psychological consultants are highly qualified experts in Social

Security disability evaluation, and their opinions regarding the nature and severity of an individual's impairment must be treated as opinion evidence. 20 C.F.R. § 404.1527(f)(2); SSR 96-6p.   In arguing that it is improper for an ALJ to rely upon the testimony of a consulting physician who has not examined the plaintiff, Plaintiff relies on *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 358 (3d Cir. 2008).   However, in *Brownawell*, the court held the consulting physician's assessment suffered from "logical errors."   *Id.*   In contrast, in this case, the medical records support Dr. Castillo-Velez's RFC assessment that Plaintiff's mental symptomatology does not preclude him from performing simple job tasks.   Her finding that Plaintiff can maintain concentration, persistence or pace for simple tasks is supported by the opinion of the other physicians in the record, including the opinion of Dr. Friedman who performed a mental status exam and Dr. Freundlich who performed a cognitive evaluation of Plaintiff. (R. 195, 261-265).   The findings of Dr. Castillo-Velez that Plaintiff is mildly limited in his understanding and memory is supported by the test results from Dr. Freundlich's cognitive evaluation and from Dr. Friedman's opinion.  (R. 193-195, 261-265).   In addition, under the "B" criteria of Listing § 12.04, Dr. Castillo-Velez's findings of Plaintiff's moderate restriction of activities of daily living and her findings that there was no evidence that Plaintiff suffered from episodes of decompensation is supported by the record.  (R. 48, 55, 57, 160, 164-166, 206).

Although Dr. Castillo-Velez's RFC assessment clearly contradicts the opinion of Dr. Jain, Plaintiff's treating psychiatrist, the Third Circuit has held that when "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason."  *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (internal quotation marks omitted).   Furthermore, "it is beyond dispute that a well-supported residual functional capacity assessment provided by a

consultative medical examiner can constitute 'substantial evidence' of a claimant's ability to work, even where that assessment is contradicted by a report supplied by the claimant's treating physician." *Demczyk v. Astrue*, 2010 U.S. Dist. LEXIS 112063 (W.D.P.A. October 21, 2010) (citing *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)).  As discussed in detail above, Dr. Castillo-Velez's RFC assessment was well supported by the record; therefore the ALJ was entitled to rely upon her opinion.

B.       *The ALJ Correctly Adopted the RFC Determination of the State Agency Psychologist.*

        Plaintiff argues that the ALJ's decision to reject the opinion of Dr. Jain, his treating psychologist, was not supported by substantial evidence.  An ALJ may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion"  *Morales,* 225 F.3d at 318 (internal quotation marks and citations omitted).  Furthermore, as stated in the regulations, a treating physician's opinion is only entitled to controlling weight when it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R. § 404.1527(d)(2).  The ALJ is required to provide "good reasons" for the weight she gives to the treating source's opinion.  *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004) (citing *Schaal v. Apfel,* 134 F.3d 496, 505 (2d Cir. 1998)).  Therefore, when the treating physician's opinion conflicts with that of a non-treating physician, "the ALJ must make clear on the record his reasons for rejecting the opinion of the treating physician."  *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986).  The ALJ must explain his reasoning based on the factors which govern weight (e.g. length and frequency of treatment, objective evidence supporting the opinion, consistency with the record and physician's

specialty).  20 C.F.R. § 404.1527(d).  Plaintiff claims that the ALJ failed to follow the 20 C.F.R. § 404.1527(d) factors in determining the weight of the opinions of Dr. Jain and Dr. Segaram.

The ALJ explained the shortcomings of Dr. Jain and Dr. Segaram's opinions when she decided not to award them significant weight: "Their findings of marked functional limitations, which would preclude the claimant from sustaining any type of competitive employment are not supported by claimant's treatment records, and are also inconsistent with claimant's activities of daily living, which are not suggestive of wholly disabling functional limitations."  (R. 16).

A review of the record makes it clear that Dr. Jain and Dr. Segaram's opinions were inconsistent with the record and lack supporting objective evidence.  There is no indication in Dr. Jain's reports that objective tests or a formal RFC assessment was performed throughout the period of her treatment of Plaintiff.  Dr. Jain's written narrative of Plaintiff's condition issued on April 20, 2007, did not follow the formal RFC assessment criteria, and she provided no objective medical evidence to support her findings.  (R. 241-243).  Her determination that Plaintiff was at least moderately limited in eighteen categories of mental function consists solely of checked boxes.  (R. 215-222).  According to the Social Security Administration's internal operating guidelines (the Program Operations Manual System (POMS)), the section of the exam form completed by Dr. Jain "is merely a worksheet to aid… and does not constitute the RFC assessment."  POMS DI 24510.060.  Similarly, the opinion of Dr. Segaram, Plaintiff's primary care physician, does not cite any objective findings to support her conclusions.  (R. 247-254).  With respect to Dr. Segaram, the Court notes that an ALJ should "give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R. § 404.1527(d)(5); 416.927(d)(5).  Dr.

Segaram's specialty is in the field of internal medicine, not in mental health; therefore, the ALJ was correct to give her opinion less weight.

The ALJ accepted the RFC assessment of Dr. Castillo-Velez on the basis that it was consistent with other objective evidence in the record. The ALJ's finding is supported by Dr. Freundlich's cognitive evaluation on July 6, 2009, which demonstrated that Plaintiff's attention, concentration, learning, memory and general intelligence were within normal ranges. (R. 261-265). Dr. Freundlich conducted various objective tests prior to issuing his opinion. He performed memory tests using the Wechsler Memory Scale-III, which is highly dependent on attention and concentration, and found that Plaintiff's score was within the average range. Plaintiff also performed well on other tests of concentration span and vigilance, as both his auditory digit span and his nonverbal spatial span were at the fiftieth percentile. (R. 262). Plaintiff was able to complete tests of perseverance without difficulty, and his ability to complete serial recitation tasks were well within the average range. Dr. Freundlich therefore found that despite some evidence of fluctuating attention and concentration, Plaintiff did not exhibit blatant lapses of attention. (Id.) Dr. Freundlich concluded from other measures of Plaintiff's learning and memory skills that his overall knowledge base was adequate and that he can tap into and retrieve information from that base. (R. 262-263). In addition, he found Plaintiff's overall intellectual abilities were shown to be well within the average range on the Wechsler Abbreviated Scale of Intelligence. (R.263).

Dr. Friedman's opinion, based on his April 15, 2008 mental examination of Plaintiff, corroborates the ALJ's finding that Plaintiff can perform simple, self-paced jobs. (R. 16, *see* R. 193-195). During that exam, Plaintiff was alert and able to provide a coherent history. Plaintiff was able to compute serial sevens until seventy-two. He was also able to repeat five digits

forward, but could only recall four digits backward.  Dr. Friedman found that Plaintiff's overall intelligence appeared to be average. (R. 194).  He also found Plaintiff's long-term memory to be slightly impaired, and his short-term memory and concentration to be mildly impaired.  (Id.)

Dr. Englestein's neurological report dated May 8, 2009, also supports the ALJ's RFC assessment.  (R. 16. *See* R. 257-259).  Dr. Englestein observed that Plaintiff was alert and fully oriented and was able to follow a three-step command and remember three out of three objects after a few minutes. (R. 258).  Dr. Englestein found that Plaintiff's neurological exam did not show any major abnormality.

C.     *The ALJ Properly Evaluated Plaintiff's Testimony.*

Plaintiff argues that the ALJ did not properly consider his subjective complaints. However, the Third Circuit grants the ALJ discretion in evaluating the credibility of a Plaintiff's subjective complaints.  *Edwards v. Comm'r of Soc. Sec.,* 989 F. Supp. 657, 660 (D.N.J. 1998).  In addition, the regulations do not consider subjective symptoms alone to be conclusive evidence of disability.  Rather, disability is established when there is objective medical evidence that a medical condition "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); SSR 96-7p.  When the ALJ finds a medical impairment that could logically account for a claimant's subjective complaints, "he or she must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work." *Hartfanft*, 181 F.3d at 362 (citing 20 C.F.R. § 404.1529(c)).

The Court finds that the ALJ's rejection of Plaintiff's testimony concerning his inability to work was supported by the evidence she considered.  The ALJ determined that Plaintiff's impairment was not consistent with a disabling condition, and only restricted him to self-paced, simple work.  (R. 14).  She found that, although  Plaintiff alleged "an inability to work," such

statements were inconsistent with his daily activities and the objective medical evidence. (Id.) The ALJ concluded that Plaintiff's daily activities are not suggestive of a wholly disabling impairment. (R. 16).

Plaintiff testified that he made coffee in the morning, drove a car, cleaned the kitchen floor for two hours a day, and prepared his own meals. (R. 48, 51, 55-56, 165). In addition, Plaintiff reported he used public transportation, walked across the street to the convenience store once a day and shopped for food and other household items one or two times a month. (R. 57, 166). Plaintiff also stated he can take care of his personal needs and can watch TV. (R. 164, 166). Therefore, the ALJ's conclusion that Plaintiff's daily activities were not suggestive of a wholly disabling impairment is supported by Plaintiff's testimony.

The ALJ relied upon the opinions of Dr. Friedman, Dr. Freundlich and Dr. Castillo-Velez to support her findings that Plaintiff's testimony and symptoms were not consistent with a finding of a medically determined impairment. Plaintiff's score on the Wechsler Memory Scale-III, a test which is highly dependent on attention and concentration, performed by Dr. Freundlich, was well within the average range. Plaintiff also performed well on other tests of concentration span and vigilance, as both his auditory digit span and his nonverbal spatial span were at the fiftieth percentile. (R. 15, *see* 262). Dr. Friedman found Plaintiff's long-term memory to be only slightly impaired and his short-term memory and concentration to be only mildly impaired. (R. 16, *see* R. 194). In addition, Dr. Castillo-Velez determined Plaintiff was at most moderately limited in his activities of daily living, his social functioning and his ability to maintain concentration, persistence or pace. (R. 15, *See* 206, 210-212). She concluded that Plaintiff 's limitations did not preclude him "from performing simple job tasks on a sustained and competitive basis." (R. 15).

If a claimant's symptoms suggest a greater limitation than can be shown by objective medical evidence alone, the Commissioner will consider other evidence, such as the Plaintiff's statements, the frequency and intensity of his symptoms, his daily activities, his medication and his treatment.  20 C.F.R. § 404.1529, 416.929; SSR 96-7p.  Plaintiff argues that the ALJ failed to take into account the factors listed above.  However, the ALJ acknowledged that Plaintiff was taking medications prescribed by his doctors (R. 15), but noted that there is no record of any psychiatric hospitalization at any time relevant to her decision, and that Plaintiff worked during a substantial period after his onset date of disability.  (R 14-15).

D.    *The ALJ Presented an Accurate Hypothetical Question to the VE.*

Plaintiff argues that the ALJ incorrectly relied upon the VE's testimony at the fifth step of the sequential evaluation.  However, Plaintiff does not claim that the VE's testimony was procedurally incorrect or that he did not follow the regulations.  Instead, Plaintiff maintains that the ALJ erred by presenting a hypothetical question to the VE which was based on an RFC determination that discounted certain medical evidence.  Plaintiff's claim is essentially just another attempt to challenge the ALJ's RFC assessment.

The ALJ is not required to convey to the VE "every impairment alleged by the Claimant."  *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).  The ALJ is only obligated to convey to the VE all of a claimant's limitations that are credibly established by objective medical evidence.  *Id.*  In addition, the ALJ's RFC finding must "be accompanied by a clear and satisfactory explanation of the basis on which it rests."  *Fargnoli*, 247 F.3d at 41 (citing *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir. 1981)).

As stated above, the ALJ's RFC determination was supported by substantial evidence.  In his hypothetical to the VE, the ALJ conveyed that Plaintiff is restricted to jobs that are self-

paced, confined to routine one to two-step tasks and do not involve detailed instructions.  (R. 66).
The ALJ further advised the VE that the job must involve "few work changes and no more than
limited contact with the public and coworkers."  (Id.)  Based on the ALJ's hypothetical, the VE
found that an individual with those limitations would be able to work in the cleaning profession,
or perform jobs such as a self-paced office cleaner and a housekeeper.  The VE also determined
that this individual could work as a security guard or an evening stock worker.  Therefore, the
ALJ properly determined that there are jobs in the national economy that Plaintiff can perform.

**VII.**   **CONCLUSION**

For the reasons stated above, the Court finds that the Commissioner's decision is
supported by substantial evidence and thus affirms the Commissioner's final decision denying
benefits for Plaintiff.   An appropriate Order follows.


/s/ JOEL A. PISANO
United States District Judge

Dated: August 4, 2011